**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

LETTER OPINION

March 11, 2008

Abraham S. Alter, Esq.
Langton & Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065

Karla J. Gwinn, Esq.
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

      Re:    <u>Barbara Johnson v. Commissioner of Social Security</u>
                Civil Action No.: 06-5708 (JLL)

Dear Counsel:

      Presently before this Court is Plaintiff Barbara Johnson's Complaint ("Plaintiff") seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to §§ 216(i) and 223 of the Social Security Act. The issue to be decided is whether the Commissioner's decision to deny Plaintiff's application for disability insurance benefits is supported by substantial evidence. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g). The Court has considered the submissions made in support of and in opposition to the instant appeal. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth below, this Court concludes that the Commissioner's determination is supported by substantial evidence and is hereby affirmed.

**FACTS AND PROCEDURAL HISTORY**

By way of background, Plaintiff applied for benefits on April 26, 2004. At that time, she was approximately 59 years-old and had attained some post-secondary education. (R. 18; 200) She was employed as a customer service representative for Huffman Koos, working five days a week, from 7 a.m. to 3:30 p.m. with mandatory overtime. (R. 18; 102) A typical work day was 12 hours with 15 minute breaks and a half hour for lunch. (R. 18; 204) Plaintiff alleged that she was disabled as of February 14, 2003 due to chronic lower back pain, arthritis of the knees, obesity, hypertension and carpel tunnel syndrome. (R. 24)

Plaintiff's medical history is extensive. In 1991, she was involved in a motor vehicle accident where injuries showed resolving cervical syndrome. (R. 19) She remained symptom free for a good period of time. (R. 20; 171) Then, on or around May 19, 1997, Plaintiff complained of back and leg pain caused by a fall, and subsequently saw Dr. Bhatwin and Dr. Gallick, an orthopaedist. Both prescribed Ibuprofen and physical therapy. (R. 19; 143) The results of an MRI taken that year revealed grade II anterior spondylolisthesis of L5-S1. Id. Epidural steroid injections were recommended, however, Plaintiff refused them. Id.

Plaintiff saw Dr. Richard Mackessy on March 13, 2001 and complained of knee pain and a "funny feeling" in her left hand. (R. 20; 171) She was found to have good range of motion in her fingers, thumb, shoulder, neck, elbow and knee. (R. 20; 171) Plaintiff was subsequently diagnosed with left carpel tunnel syndrome, patellar femoral pain and lumbar syndrome. Id. Treatment included anti-inflammatories, physical therapy and weight loss. Id. When she returned to Dr. Mackessy on April 9, 2001, her hand was better but her back and knee were bothering her. (R. 170) Dr. Mackessy said the results of the exam were benign and attributed the pain to a sprain of her knee and back. (R. 20; 170) He recommended shots for medial joint arthritis, but Plaintiff refused. (R. 170) As a result, she was kept on physical therapy and anti-inflammatories. (R. 20; 170)

On June 7, 2001, an MRI of the lumbar spine revealed lytic spondylolysis at L5 and S1 with some end-point degenerative changes and foraminal stenosis around the L5 nerve roots. (R. 20; 169) On June 29, 2001, Plaintiff saw Dr. Douglas Bradley and discussed her work as a customer service representative, including restrictions from leaving her work station. Id. Dr. Bradley noted that if she could get up every 30 to 40 minutes for a few minutes and stand she would have relief. Id. Dr. Bradley renewed Vioxx and suggested physical therapy. Id. Subsequently, Plaintiff was given epidural blocks, but in the end she claimed they were of no help. (R. 21; 168) Surgery was recommended, but she refused. (R. 21; 166)

Plaintiff was out of work from about October 2001 to about May 2002, but returned to work in June 2002. (R. 18, 22; 164,166) On September 3, 2002, Dr. Mackessy examined Plaintiff and found her to be healthy with good range of motion in her neck, shoulder, elbow, forearm, wrist, and fingers, but noted some pain in her wrist. (R. 22; 165) She was given a brace and Naprosyn. Id. On December 17, 2002, Dr. Bradley saw Plaintiff and noted he had not seen her for seven months. (R.164) Plaintiff indicated to him that she returned to work and if she sat in a chair with a stiff back to give her support her pain was relieved. Id.

A disability interviewer saw Plaintiff on July 9, 2004 and observed her standing up and

sitting down carefully and walking slower than "normal." (R. 22; 93) On July 27, 2004, Plaintiff saw Dr. Jonas Leifer who noted that he had not seen her since April 16, 2004. (R. 20; 143) At the time of the April visit, Plaintiff's weight was 297 pounds and her blood pressure was 150/100. Id.  She was given Skelaxin, a muscle relaxant, four times a day. (R. 22; 143) Dr. Leifer also noted that her follow-ups had not been consistent. Id. He had not seen her for her blood pressure or back pain since January 21, 2003. Id. Nonetheless, Dr. Leifer opined, taking into account Plaintiff's statements, that her inability to work at that time was likely due to her background of obesity and back pain. Id.  Then on August 19, 2004, Dr. Fernando performed a consultative examination. (R. 22; 144)  Plaintiff complained of lower back pain and knee pain after a fall she sustained two years prior.  Dr. Fernando diagnosed  hypertension, obesity, lower back pain, possibly from osteoarthritis and arthritis of the right knee. (R. 22; 146-7)  Plaintiff stated that she could cook, clean, shop and perform self-care without assistance. (R. 22; 144)  Upon examination, Plaintiff was 4 ft. 11 inches and 294 pounds, but used no assistive device to walk. (R. 145)  At that time, he observed that she needed help getting on and off the exam table, but was able to rise and sit in a chair without difficulty. (R. 23; 145)

An October 18, 2004 RFC report revealed that Plaintiff could perform light work.  The examiner found that Plaintiff was able to drive a car, perform activities of daily living and therefore could perform her past relevant work as a customer service representative. (R. 23; 151-56)  The record indicates that Plaintiff was receiving charity care from Trinitas hospital and rental assistance. (R. 163) Plaintiff stated she saw Dr. James Rinkle on February 15, 2005 who told her that there was nothing he could do for her back. (R. 23; 162) He diagnosed suspect osteoarthritis of the left knee secondary to obesity with a prior history to trauma. (R. 191) Dr. Rinkle noted tenderness at L4-L5, but did not note any motion problems. (R. 190)  He recommended nutritional counseling. (R. 191) Plaintiff's  medications included Verapamil once a day, Celebrex once a day, two Tylenol Arthritis for knee pain per day, Vioxx until it was removed from the market, and Extra-Strength Tylenol for her back pain.  (R. 23; 160)  Finally, no epidural injections were given since 2001. (R. 23; 185)

Plaintiff's petition for disability insurance benefits was denied after a hearing on May 10, 2005 before Administrative Law Judge ("ALJ") Michal Lissek.  The ALJ issued a written opinion on December 27, 2005 based on the record up to and including the May 10th hearing.  Therein, the ALJ indicated that she cancelled a supplemental hearing to take testimony of the Plaintiff and a second medical expert, because Plaintiff's counsel, Abraham S. Alter, Esq., refused to produce his client. (R. 17; 241) Instead, the ALJ determined that she had enough evidence before her to render a decision.  Thereafter, Plaintiff sought Appeals Council review and was denied same on September 25, 2006. See Pl. Br. at.1; (R. 7-10). The decision of the ALJ, now a final agency action, is reviewable by this Court under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### A.    Disability Defined

Under the Social Security Act, a claimant must demonstrate that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Social Security Regulations set forth the following five-step, sequential evaluation procedure to determine whether a claimant is disabled:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. These are the five steps we follow:
>
> (I) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (See paragraph (f) of this section and § 404.1560(b).)
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you

>can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. (See paragraph (g) of this section and § 404.1560(c).)

20 C.F.R. § 404.1520(a)(4).

### B.     Burdens of Proof

The five-step sequential evaluation involves shifting burdens of proofs. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant has the burden of establishing at Step 1 that he has not engaged in "substantial gainful activity" since the onset of the alleged disability and at Step 2 that he suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). If the claimant establishes these initial burdens, he must next demonstrate, at Step 3, that his impairment is equal to or exceeds one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If he makes this showing then he is presumed disabled. If he cannot show this, then at Step 4 he must show that his residual functioning capacity does not permit him to return to his previous line of work. 20 C.F.R. § 404.1520(e). If the claimant cannot show this, then in Step 5, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). Note that the burden only shifts to the Commissioner at Step 5; throughout Steps 1 through 4 the burden lies entirely with the claimant. However, if the Commissioner cannot meet this burden, the claimant shall receive benefits. "For each of the first four prongs, a finding of 'not disabled' will end the inquiry; otherwise the inquiry will proceed to the next level." Alexander v. Shalala, 927 F. Supp. 785, 792 n. 4 (D.N.J. 1995).

### C.     Standard of Review

"Substantial evidence" is the standard of proof in disability insurance benefit cases. Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence may be slightly less than a preponderance. Hanusiewicz v. Bowen, 678 F.Supp. 474, 476 (D.N.J. 1988). When an "[ALJ] is faced with conflicting evidence he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F.Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). An opinion regarding medical equivalence must be based on medical findings supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§404.1526(b), 404.1527.

The reviewing court has a duty to review the evidence in its totality and reviews whether the Commissioner's determination was reasonable. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). The Commissioner has a duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, [he] must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden, 677 F.Supp. at 278. The reviewing court

-5-

gives deference to the administrative decision, but the court has a duty nonetheless to scrutinize the entire record to determine whether the ALJ's findings are rational and supported by substantial evidence.  See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  This Court, however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). With this framework in mind, the Court turns now to the ALJ's findings and then to the Plaintiff's arguments.

## DISCUSSION

### A. Summary of the ALJ's Findings

The Court begins by reviewing the ALJ's application of the above five step process.  At Step 1, the ALJ found that Plaintiff had not engaged in substantial work activity since the date of disability.  At Steps 2 and 3, she considered Plaintiff's impairments "severe" within the meaning of 20 C.F.R.§404.1520, but not "'severe' enough" to meet or medically equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 25) She found that Plaintiff's hypertension was under control, and that the record did not indicate any end organ damage due to same. (R. 25) Therefore, the ALJ concluded that Plaintiff's hypertension, even with her obesity considered, did not meet or equal Listing 4.03.

In particular, the ALJ found that Plaintiff's knee pain did not hinder her ability to walk without the use of a cane, a walker or a crutch.  She noted that medical reports between 2002 and 2004 revealed no significant knee problems and from the same period through 2005 there was no indication of treatment for knee problems.  (R. 25) For instance, the ALJ referred to Dr. Fernando's August 2004 examination wherein he found that her right knee was limited due to pain as a result of arthritis and osteoarthritis of the lumbar spine, but she was only moderately restricted.  (R. 25; 147) Moreover, the she noted that Plaintiff did not come to the hearing with a cane. (R. 27)  As a result, the ALJ  found that Plaintiff's knee pain did not meet or equal listing 1.02, even with her obesity considered, because the record did not document an inability to walk without the use of an assistive device as defined in §1.00B2b of Appendix 1.

The ALJ considered Plaintiff's wrists problems.  She noted that Plaintiff saw two doctors between March 2001 and August 2004, Drs. Mackessy and Fernando, and was found to have good range of motion in her elbow, forearm, wrist and fingers. (R. 25-26;165)  She considered the fact that Plaintiff was given a wrist brace and Naprosyn, but also observed that Plaintiff was not wearing the brace at the hearing.  Since the record did not document "involvement of one major peripheral joint in each upper extremity, resulting in an inability to perform fine and gross movements as defined in §1.00B2c [1] of Appendix 1, Subpart P, Reg. No. 4 the ALJ found that Plaintiff did not meet or equal

---

[1] §1.00B2c provides: "What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living.

Listing 1.02A. (R. 26)

With regard to Plaintiff's back pain, the ALJ considered her medical records and the testimony of Dr. Weiss. Dr. Weiss testified at the May 10th hearing that she "probably" equaled listing 1.04, but could not determine when she equaled that listing. (R. 26; 232-33) He also testified that there was no hard evidence in the file to support his opinion, but the ALJ found that his opinion was based at least in part on Plaintiff's testimony. (R. 26; 235) The ALJ considered his testimony, along with the fact Johnson returned to work for approximately eight months before the alleged onset date, despite the results of her MRI's. (R. 26) The ALJ found that the combination of these factors, including her obesity, indicated that the results of the MRIs were not enough to show that Johnson was unable to work. (R. 26-27) Therefore, since Plaintiff did not have an impairment or a combination of impairments that met a listing, the ALJ moved to Step 4 to determine her residual function capacity.

At Step 4, the ALJ determined that Plaintiff retained the residual functional capacity to do light work and therefore could return to her prior employment as a customer service representative. Her findings were based in part on: (a) the incredibility of Johnson's testimony; (b) information contained in Plaintiff's Disability Report about her job hours and requirements; (c) the fact that Dr. Leifer's opinion was not supported by the record and that its veracity depended on Johnson's credibility; and (d) the unreliability of Dr. Weiss' testimony since he said there was no "sufficiently substantiating" evidence to support a listing under 1.04, disorders of the spine. (R. 27-29; 94-100; 232) 20 C.F.R. 404.1567. This conclusion is consistent with the October 18, 2004 RFC report wherein Plaintiff was found able to perform "light work." (R. 155)

**B.     Analysis**

(1)     The ALJ's Assessment of the Evidence

Plaintiff's chief contention is that the ALJ erred at Step 3 by failing to see that Dr. Weiss' testimony that she "probably" meets listing 1.04 means that she "presumptively" meets 1.04. See Pl. Br. at 22-23. Plaintiff further contends that not only did the ALJ "[seem] to have relied on her own medical judgment" to make a finding that she does not meet any listing, but that the ALJ failed to consider her obesity at each stage. Id. It is well settled that an ALJ must establish the evidence he found persuasive and the evidence he rejected, as well as his reasons for doing same. See Cotter v. Harris, 642 F.2d 700, 705-07 (3d Cir. 1981)("The ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits. The ALJ's decision must be in writing and contain findings of fact and statement of reasons in support thereof.") Id at 704.

Here, the ALJ found Plaintiff's testimony incredible for several reasons: (1) the medical

---

Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level."

reports revealed that Plaintiff had good range of motion in her neck, shoulder, forearm, wrist and fingers; (2) her ailments did not affect her ability to feed herself or to take care of personal hygiene as defined in §1.00(B)(2)(c) of Appendix 1, Subpart P. Reg. No. 4.; (3) the adequacy of the distances the Plaintiff was able to walk as well as the length of time she was able to stand; (4) the fact that she was not wearing her prescribed braces at the hearing which called into question the need for them; (5) her testimony that the doctor was going to prescribe a cane "after" the hearing, but managed to get to the hearing without one; (6) the fact she has never been hospitalized for her ailments; (7) her claims as to how long she could sit, which were contrary to the physical limitations listed in the Trinitas records; (8) her sporadic doctor visits; and (9) she returned to work. (R. 25-28, 164, 185, 229)  All of these factors indicated to the ALJ that Plaintiff was not in severe chronic pain, despite her testimony to the contrary. (R. 28)  Therefore, this Court finds the ALJ properly set forth her reasons for rejecting this evidence. Cotter, 642 F.2d 705-07.

In a footnote, Plaintiff without specificity alleges that the ALJ's review of Plaintiff's obesity "hardly complies" with the dictates of SSR 003-P.  See Pl. Br. at 22.  The Court disagrees.  The Court finds that the ALJ did consider Plaintiff's obesity and the medical evidence regarding same at the appropriate steps throughout the opinion. (R. 25-28) She found that given Plaintiff's "infrequency of treatment" from 2003 to 2005, her obesity when considered with other impairments and her ability to ambulate did not result in a "disabling level of pain or fatigue." [2] (R. 24-28) Moreover, the ALJ took note of the fact that Plaintiff returned to work despite the results of her MRI's. (R. 26; 164)  Therefore, this Court finds that the ALJ's review including her evaluation of the Plaintiff's residual functional capacity is consistent with the requirements of SSR 00-3P.[3]

Further, the Court also finds that the ALJ properly set forth her reasons for rejecting Dr. Weiss' testimony. Cotter, 642 F.2d 705-07.  Dr. Weiss stated that Plaintiff could "probably" equal listing 1.04, disorder of the spine, but he could not point to any "sufficiently substantiating" evidence to support that claim.[4] (R. 232-33) The ALJ found that his opinion was also contradicted by the fact that Plaintiff returned to work approximately eight months before the alleged onset date. (R. 26; 164,166) Therefore, this Court finds that the ALJ properly accorded "no weight" to Dr. Weiss' opinion, because it was unsupported by the medical evidence. 20 C.F.R. §§404.1526(b), 404.1527.

---

[2] The Court notes that the ALJ based her findings in part on the above-referenced March 2001 knee exam by Dr. Mackessy finding pain attributed to knee sprain and the exam of Dr. Fernando finding moderate restrictions of the knee and observing the Plaintiff walking without the use of an assistive device. (R. 25; 145,170)

[3] SSR 00-3P provides in relevant part: "The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."

[4] This Court notes that immediately after Dr. Weiss testified that Plaintiff "probably" meets 1.04, he stated that are "components missing," therefore, the Plaintiff "does not meet a listing." (R. 232-33)

Based on the foregoing, this Court finds that the ALJ's decision as a whole reflects that she properly considered evidence contained in the record and correctly explained her reasoning for affording little weight or rejecting any such evidence. (R. 26)  Richardson, 402 U.S. at 401; Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  The Court now turns to Plaintiff's allegations of bias.

(2)    The ALJ's Alleged Bias

Plaintiff argues that the ALJ conducted the proceedings in a biased manner, in particular: (a) that the ALJ had no authority to call Plaintiff to testify at the August 23, 2005 hearing; and, (b) that she failed to consider his written objections. See Pl. Br. at 19. An ALJ cannot conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter.  20 C.F.R. §416.1440.  The objecting party must submit their reasons to the judge.  Id.  The ALJ will then consider the objections and decide whether to proceed.  Id.  An ALJ is presumed to be unbiased unless there is a specific showing for cause to disqualify.  Schweiker v. McClure, 456 U.S. 188, 195(1982).  The burden to show cause rests with the party asserting bias.  Id.  Displays of annoyance, impatience, dissatisfaction, or anger toward a party also do not form a basis for proving bias. Liteky v. United States, 510 U.S. 540, 555 (1994).  A party asserting bias must show that the behavior of the ALJ was "so extreme as to display clear inability to render fair judgment." Rollins v. Massanari, 261 F.3d 853, 858 (9th Cir. 2001)(citing Liteky, 510 U.S. at 551).  Moreover, "[t]he due process requirement of an impartial decision-maker is applied more strictly in administrative proceedings than in court proceedings because of the absence of procedural safeguards normally available in judicial proceedings." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995).

a.    The ALJ's Alleged Impropriety in Reopening the Hearing and Calling Plaintiff to Testify.

Plaintiff objects to the ALJ's reopening of the hearing and the fact that she was being called to testify. See Pl. Br. at 19-20.  The Court finds that the Plaintiff's contentions are baseless. The ALJ has discretion to decide whether to reopen the hearing if he believes there is new and material evidence to be presented. 20 C.F.R. §404.944.[5]  With regard to the ALJ's conduct during the proceedings, this Court finds that the record demonstrates that they were conducted in an fair and unbiased manner.  The ALJ mailed Plaintiff a "Notice of Hearing" which clearly set forth her rights and the potential consequences of her failure to appear. (R. 66)  On August 23, 2005, Plaintiff's attorney appeared without his client to what he termed to be a "meaningless proceeding." (R. 72) Plaintiff's attorney became argumentative with the ALJ when she asked him to produce the client. (R. 241-42)  He objected to the ALJ calling Plaintiff to testify and suggested that the she "play the tape" of Plaintiff testifying at the May hearing instead.  See Pl. Br. at 16 (R. 242)  The ALJ denied the request and advised Counsel to submit his objections in writing. (R. 242)  He began to argue again. Id.  As a result, she asked him to step out of the room. Id.  In light of the foregoing, the Court

---

[5] 20 C.F.R. 404.944 provides in relevant part, the following: "The administrative law judge may also reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence. The administrative law judge may decide when the evidence will be presented and when the issues will be discussed."

finds the ALJ's conduct was entirely reasonable and certainly did not evidence behavior "so extreme" as to render unfair judgment. Liteky, 510 U.S. at 551.

    b.    The ALJ's Alleged Failure to Consider Written Objections.

Plaintiff argues that the ALJ failed to consider all his objections, including his "motion to recuse." See Pl. Br. at 20. However, the ALJ addressed – at length – his written objections in her Opinion. See Opinion at R. 28-29. Plaintiff's argument is therefore meritless and can be rejected without discussion.

## CONCLUSION

In light of the foregoing, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act was supported by substantial evidence. The decision of the Commissioner is hereby affirmed.

An appropriate Order accompanies this Opinion.


                                                                /s/ Jose L. Linares
                                                              UNITED STATES DISTRICT JUDGE